Our next case is Lee v. Buth-Na-Bodhaige. Buth-Na-Bodhaige. All right, thank you. 5-18-0033. Are the parties ready? Good morning, Your Honors. May it please the Court. Good morning, Counsel. I'm Eric Alan Isaacson for the objector, Appellant Jenna Dickinson. In this case that involves settlement of a federal class action that was initially filed in the Southern District of New York where the case couldn't proceed and be approved because the main plaintiff didn't have an injury that would warrant Article III standing, quite frankly, didn't have an injury that would warrant asserting a claim in the federal action. That was never decided, what you just concluded, correct? That was pending at the time in the Court? The district court issued a preliminary approval of the class action settlement. The district court approved notice to the class. And when my client's objection was filed identifying the fact that the main plaintiff had suffered no injury and didn't have Article III standing, the Court took the final approval hearing off of calendar and ordered the plaintiff to show cause why the case should not be dismissed. Right, but the issue that was pending at the time the case left New York was whether, indeed, an injury had to be shown, an actual injury as you claimed, under Article III. Yes. Right. The issue is pending. And where are you from, sir? I'm from California, Your Honor. And your objector, how many objectors were there to this preliminary approval? I think there were four or five, Your Honor. Out of how many class members? The number of class members is probably well over three million. So we had four objectors out of 3,656,931 people. The vast majority of whom never saw USA Today and didn't see the notice? Well, the Court approved USA Today, although I may agree with you, knowing what the percentage of penetration is for USA Today. But there were four objectors out of 3.6 million people. My question to you is this. What benefit did your objector intend to confer on this class by objecting? A couple of things. One, process matters, Your Honor. Say it again? Process matters. Okay. In legal proceedings, process and due process of law are absolutely critical. And for due process of law, I think that you need, in a class action that is compromising class members' claims, you need to have a class representative who has a claim and has a stake in the matter. What benefit was the objector trying to confer that was not conferred by the settlement? Okay, you didn't think the class member was adequate under the federal rules, right? That's correct. And the judge could have substituted a, quote, adequate class member. So my question is, what benefit were you trying to confer? The benefit is that, one, if you have a class member with a claim, you're going to likely get a better settlement. There were two competing class actions. There was one in Florida, Flom, prosecuted by the Keough Law Firm, which gets much better settlements, quite frankly, than the class counsel in this case did. The Keough Law Firm comes back with settlements in the millions of dollars. The Keough Law Firm also goes to the trouble of asking the credit card companies for the transaction data with the ability to identify class members so there can be direct notice. Keough Law Firm, although I have issues with some of their settlements, the Keough Law Firm does a much better job of litigating the cases. This was a race to the bottom settlement. Reverse auction is what you were worried about. Pardon me? You were worried about the reverse auction. I was worried about a reverse auction, absolutely, Your Honor. And there was a case pending in Florida. What about those? Flom. I'm sorry? Flom, the Flom case, yes, Your Honor. Okay, and what were you trying to do there? Are there better lawyers there as well? That is the Keough Law Firm. The Keough Law Firm, are they in California too? No, they are in Chicago, and they appeared with an objection. They filed an objection with also the Owens Law Firm in Florida. It's a consumer protection law group. I can't remember the precise name. They filed an objection in the Southern District of New York. They sought to stay in the Southern District of New York on action. Who is they? The Keough Law Firm and Owens Law Group through an objector named Amy Steinberg. It's in the record. I cite her brief in my reply brief. What happened to her? Did they buy her out? She didn't show up in St. Clair County. I don't know if she got notice of the proceeding in St. Clair County, quite frankly, Your Honor. And I doubt they bought her out. No, maybe they did. I do not know. Quite frankly, I don't know. So the benefit that you sought to obtain was a better deal for the plaintiffs? Better deal for the plaintiffs, better class action principles, better litigation. And I'm also concerned that when you're dealing with FACTA and a statute that is designed to answer identity theft, where the worry is that people are going to have their identities stolen, that you shouldn't be compromising claims without telling people that there's a risk of identity theft for which they get a $12 gift card. If there are members of a 3.6 million member class where some of the members of the class end up having their identities stolen, they ought to be able to have a claim and not find out that their claim was barred because there was a notice in USA Today that they didn't see. Or if they did see it, they didn't know that they had received a receipt from Body Shop in the year 2011 or 2012 that had more digits of their credit card number on it than it was supposed to. Well, that's pretty speculative. How do you put a value on, well, they might have had their identities stolen in the future. How does anyone put a value on that? Well, that's a question of risk, and that raises a question. How do you put a value on that economically? If your identity is stolen, it's, you know, a big value. What? I mean, it could be paid for your $50,000. It could be the loss of a job, the loss of a mortgage. But how would you put an economic model together to evaluate that? Well, the problem here is that you've got a class that is being sold out, where some of the members may have very substantial damages, where the class rep has suffered no injury. They can opt out. And cannot suffer an injury. They can opt out. They can opt out if they don't see the notice in USA Today. Well, where is personal notice given in this case? There was personal notice given to members of the Body Shop Rewards Program. That's who got personal notice. There was also, excuse me, there was also a website, right? How many class members likely saw that? I bet not very many. This is to be decided by the federal court. The federal court, using federal rules, deemed notice adequate at the time. Preliminarily. Preliminarily, the website, the personal notice, those special members, and USA Today, which you and I can agree probably that is tenuous at best. The federal court, however, deemed it was adequate notice, right? Preliminarily. And your client, of course, found it. Well, my client is a member of the Rewards Program. Okay, so she got notice. It mails to her, direct notice. She got direct notice. And that's all Phillips v. Church Petroleum requires. Well, it's adequate notice. Direct notice is the best notice. The case law is very clear, too. Fox in the Illinois precedence, for example, indicates that if you can identify class members' addresses, you need to give individual notice. And you can identify the 3.5 million or 3.6 million class members, if there's that many, by asking the credit card companies to provide their names and addresses, which is what the Keogh Law Group does. So you're saying that there's a way to do discovery outside third-party discovery and get the names and addresses of everybody who completed a transaction at the body shop over this period of time? It's the standard practice in the industry, absolutely. For factored cases? For factored cases, absolutely. It's what the Keogh Law Group does in case after case after case. They did it in the Godiva chocolate case. They did it in the Spirit Airlines case. Sounds like your objector is a professional objector. I don't think so. How many objections have you or your client been involved in? My client has been involved in a total of two objections, Your Honor. And how about you? I've probably been involved in seven or eight. Are they all factored cases or just one? No, only two are factored cases. The defendant's brief says that there are four that are doing many factored cases. Of course, you give four examples, two of which are factored, or I think one of which is a factored case. One of the examples is the objection that I gave in the Chieftain Oil royalty case where we got a $17.3 million attorneys fee award vacated by the 10th Circuit. Now, I spent 26 years in big plaintiff's class action firms, Your Honor. I made millions of dollars, and quite frankly, I feel an obligation to try to clean things up. That's what I'm about here. I have not asked for or accepted payments for withdrawing any objections in any cases. It's not what I'm about. It's not what I want to do. Well, then you should well understand that in order to object, you try to confer an additional benefit on the class. And would you confer an additional benefit on the class in this case if I were able to vacate a race or a reverse auction, race to the bottom settlement so that a better settlement could be achieved, if not in this case, in Florida by the Flom plaintiff? Or California by Taylor. Let me ask you this about the release. Do you see the release as releasing all claims, including the Florida and California claims? That's my understanding of the release, Your Honor, yes. I think that's their understanding as well. That's why they appeared in the Southern District of New York to object to initially the intervene. They sought to intervene. It was denied. They filed an objection to the settlement. And that's on the record in this case. But there were no writs filed by any of the federal courts. Writs. To prevent things from going. Like the federal court in New York didn't file a writ to prevent the California and Florida cases from going forward. No. I think states were issued in the district courts in Florida and in California. When the settlement was announced. Yes, I believe so, Your Honor. So the settlement did impact those two cases. Yes, it did. And when the plaintiffs in the Florida action informed the court that the New York action had been voluntarily dismissed, the body shop came in and said, oh, no, no, no, no. We're filing that same settlement in St. Clair County Circuit Court. Maintain the stay. So that court maintained that stay. Which court maintained the stay? That was the Southern District of Florida. The Southern District of Florida maintained a stay based on a state court potential settlement. Based on a state court potential approval of a settlement that couldn't get approval in federal court. Yes, Your Honor. That is the case. Interesting. I should add that the status of FACTA cases in the 11th Circuit is to some degree up in the air. I told you I've done objections to two FACTA cases. This one, and I guess you'd count New York and St. Clair, you know, that that would be true. And one other one, which is pending before the 11th Circuit currently, was argued on January 12th of this year. And we'll decide whether the 11th Circuit is willing to follow the 2nd Circuit, 7th Circuit, and 9th Circuit with respect to their holdings on Article 3 standing, requiring some kind of a showing of the plaintiff that there's a greater risk of injury to them than simply getting a receipt and looking at it themselves. In the cases before the 11th Circuit, the plaintiff held on to the receipt. Now, that is the only other FACTA case I've done an objection in. And I have not taken a payment. I've not taken a side payment to dismiss any objection in any case. My question is, this question of injury, it seemed that the Congress has given us a range of what the injury level is in a willful violation. Well, Congress, for a willful violation, says that the plaintiff has a choice of opting for either proof of actual damages, which could be very substantial, or in a case where they're insubstantial or difficult to show, can opt for liquidated statutory damages of from $100 to $1,000. Now, $100 a claim in this case would, as many as 3.6 million transactions, would be $360 million. $1,000 would be, what, $3.6 billion. You're not going to bet the company liability here. And it's settled for what amounts to nuisance value where the company gets to give to its loyalty rewards program members $12 gift cards that they'll use at the body shop. But we don't know who buys more than $12. For those who redeem, I mean, for those who reactivate them, they're going to get their things probably by e-mail. Many people look at it and think that it's junk mail. They're not going to open it. They're not going to activate the cards. Those who do activate the cards, probably, you know, many of them are not going to use the cards or put them aside or lose them or something like that. So you're talking about a case that is being settled for a pittance. And, you know, the Keough Law Group settles for millions of dollars. Still, typically, you know, less than 5% of the damage is in the case. But they do get better results. And if this case were litigated in Florida, you know, I would expect it would get a better result. Pardon me? What part of Florida? Southern District of Florida, Your Honor. A lot of transactions filed there. Yes, I know. I don't recall off the top of my head who the judges are. I have been there. Okay. I'm sorry, I lost my train of thought. So you go ahead. Okay. I think that this is a case where we can adequately represent the class because he hasn't got an injury. He hasn't had standing. Under Illinois law, standing is an affirmative defense that a defendant can assert. The fact that the defendant has waived affirmative defense suggests collusion here. You can't turn him into an adequate class representative by dropping invalid defense to his individual claim. That's done all the time. Now you're arguing something that's done all the time. I agree with that. If you were a plaintiff's lawyer, you must have been involved in releases that do that all the time in a release. They release all affirmative defenses in good settlements. When they do the settlement, in order to draw as many people in as possible, often the defendant will waive all kinds of defenses and try to make the settlement class as large as possible without increasing their liability, which they did here by doing $12 gift cards to Body Shop Rewards Program members while ensuring that the 3 million-some people who are really the members of the class who actually got the receipts that violated FACTA don't know about the case unless they read USA Today. In two issues of USA Today, see the notice and remember, you know, in 2012, I think I bought something at the Body Shop and I got my receipt at home because I save all my receipts in my sock drawer. I'll go take a look and see if that receipt in that sock drawer has the extra digits on it. The truth is that the actual class in this case did not receive the notice that they were entitled to. But now you're asking us to review what the federal court in the Southern District of New York did. Because our court here allowed the federal notice to be adequate notice here, right? Well, no additional notice was required except to update the website as I understood it. Well, the federal court lacks jurisdiction to enter any orders. Well, that's a legal argument for the New York court. That's not for us. Well, that's an argument for the federal court. And if it vacated, if it dismissed the action because there was no jurisdiction, that means that there is no collateral estoppel or res judicata or any effect to any of its findings. Who dismissed the case in New York? The plaintiff did, Henry Lee. Not the federal court. I thought maybe you misspoke because you said the federal court dismissed it. They dismissed it, the plaintiff. Voluntarily dismissed it. That's correct. They ran. That's correct. They ran. They fled the federal jurisdiction and came to St. Clair County where they filed the same settlement, stipulated that there was no necessity to give notice to the clients of the Illinois state court proceeding. I think that violates Illinois law. Let me ask you this. Do you think there's jurisdiction in Illinois? Subject matter. Subject matter jurisdiction, my understanding is that, my understanding is that standing is regarded to be an affirmative defense under Illinois law. No, but do you think as we sit here today that this court has, that the circuit court had standing to enter an order? But there was jurisdiction. I'm sorry. I think that if Lee had sought to settle his individual claim against the body shop and the body shop waived its affirmative defense, that the circuit court probably would have subject matter jurisdiction to do that. Are there any Illinois class members that were identified in their papers? They say in a footnote in their brief that there are more than 7,000 Illinois class members. But before the court, before the circuit court, I didn't see that. No. Were they identified Illinois class members? No. And they certainly didn't substitute any. There's no Illinois class member identified there. And if there is, if that's a reason. Mr. Lee is from New York, I think. I don't know where Mr. Lee is from. The transaction occurred on Lexington Avenue in New York. The body shop isn't here in Illinois, although they have stores here in Illinois. That's correct. Under Daimler, they wouldn't be here, right? I'm wondering where the subject matter jurisdiction is. But I can reserve that for the plaintiffs. And they don't have any stores in St. Clair County? Well, they used to. Not mistaken. Okay. If they do, maybe they don't. I also want to very briefly address the issue of incentive awards. That's right. I'm sorry, my time's running. I'll take my seat. You'll have five minutes. Thank you very much, Your Honors. May I please record, Counsel? Before I proceed, I want to check that Clerk advised I could use the stopwatch on my cell phone and split the time with my co-appellee. Is that okay with Your Honors? That's fine. And also state your name for the record as well. My name is Thomas Haig with the law firm Spencer Fane, representing Henry Lee, the appellee. Mr. Haig, how did you find St. Clair County? My firm, I'm officed in downtown Clayton in St. Louis, and I regularly practice in St. Clair and Madison Counties. Well, how did your co-counsel find St. Clair County? We have been, my firm has been co-counsel from the beginning of the New York litigation. When the show cause order was issued based on recent Second Circuit interpretations of the Spokio decision concerning Article III standing in federal courts, we decided that there was significant risk and it would be better to refile this cause of action and the settlement in a state court. Based on our New York co-counsel's analysis of refiling it in New York, we decided it would be a better place to refile it somewhere else. We looked at where my firm practices and decided that St. Clair County. Well, why not St. Louis City? That's an easy jurisdiction. You pick St. Clair County because you're forum shopping, right? I personally have more experience in class action litigation in Illinois than I do in Missouri. In St. Clair? St. Clair, specifically. Is where you mostly practice class action? Typically, prior to this, for defendants, but yes. So we've got a New York plaintiff, right? The class representative is from New York. And there's a transaction on Lexington Avenue in New York City. This transaction is. That's where the tort or the violation of fact, I should say, occurred, right? Well, the violation for the class occurred. The violation for the individual plaintiff who we have to look at first in a class action occurred in New York City, correct? Yes. And where is the body shop located under Dynmore? I would defer to their counsel to address that. Well, where are they? They're not in Illinois, right? I don't believe that they're either incorporated under the state of Illinois law, nor is their principal place of business in Illinois. And other times, I think in the U.S. Supreme Court case of Dynmore, they wouldn't be here, right, for purposes of service of litigation. We've just gone through that. So why are you picking St. Clair County, Illinois, other than pure form shopping? Well, we think this could have been filed anywhere where these transactions occurred. There are at least over 7,000 known members of the class that are residents of Illinois. Then why not put one in the case? Or why not represent to the court how many class members there are? We did. In our pleadings, which were not contested, and therefore I believe at this posture would be taken as true, we pleaded that there are, I forget the exact number, but it's 7,000-something known members of the loyalty program, the known members of the class who are residents of Illinois, including approximately 50 in the county of St. Clair. And not one was substituted. We didn't see that that was a need to do to proceed, and no one objected on that basis, neither any of the objectors who were. . . The objectors who filed objections in the federal court, by the way, were provided direct, actual notice of the refiling of St. Clair by certified mail. That was required by Judge Logano, and we did that. And no one objected on the basis that we. . . Say that again. So as I. . . Did the certified mail notice the loyalty program members? To the objectors. To the objectors. You didn't give. . . We did give mailed notice. In New York, of a New York lawsuit. How did you advise those people that, oh, by the way, we've dismissed that, and we've moved to St. Clair County, Illinois, a small county in southern Illinois? Not just yet. We updated the website that's maintained to provide notice of this cause of action. That's it? And all five objectors or their counsel who had filed objections in the New York action were given actual notice of the refiling and of the preliminary hearing. So you understand that a settlement class is to be given heightened scrutiny in its analysis, don't you? Do you think a settlement class is to be viewed differently than a class that's developed and a settlement that's developed after extensive litigation? Do you note that, the answer to that question? As far as giving them notice of refiling the. . . Is there a different scrutiny that's to be given under the U.S. Supreme Court law? Forgive me, I'm not sure I understand your question, Justice. The U.S. Supreme Court has said that when a settlement class, that is a class that is only put forth because it is settled, as your class is. In other words, if your settlement falls through, you all go back to your same positions. That's this class, right? If the settlement doesn't go through, you go back to your corners and you fight. So this is a settlement class. The U.S. Supreme Court has said that a settlement class is to be given higher scrutiny in its analysis than a class settlement that's developed after the parties have fought. Are you aware of that rule? I understand that. I disagree that this is not a class that was settled after litigation. There was extensive discovery and negotiations undertaken to reach this settlement in the New York action. This is the same cause of action. It's the same settlement. There's no allegation by the objector that anything materially changed as far as the terms of the settlement. That has nothing to do with my question. My question is, we are to give it higher scrutiny. So you're coming to us with coupons. This is not a coupon. Coupons. This is a coupon case. It's a $12 gift card, right? It's a gift card that can be used as cash in any body shop, store, or on their online shop. How does this differ from Judge Posner's case in Redmond v. Radio Shack? Have you read that case? Yes, Judge. And so you know that Judge Posner has already weighed in on these bounties, as he calls them. How is this different? This is intended to be able to be used as cash in any of the body shops, retail outlets, or their online store. And it's not just a voucher that you may lose some of the value. It can be applied to tax. Do you get money back if the average price is $8? I think that was your evidence. The average price of an item is $8, right? Was that the evidence? That is what's stated, yes. And so you're giving a $12 coupon. If I buy something for $8, do I get $4 back? You keep that on your gift card. So I don't get $4 back. I get a credit back. Yes, you can't just take it in and buy the cheapest thing in the store and get cash back. Right. So coupons were the subject of why Congress passed CAFA. Settlements like this is why we have CAFA. Plaintiffs are stuck with CAFA, right? Isn't that what CAFA does, is it restricts coupon settlements? It's one of the things, Judge. Tell me how this complies with CAFA. This doesn't need to comply with CAFA. This is an Illinois state jurisdiction. I know. It ran from federal court to state court. No one has raised noncompliance with CAFA as a basis. I'm raising it. Tell me how this complies with CAFA. This, Judge, I'm not sure how to answer that. I don't believe it needs to comply with CAFA. Because all the evils of CAFA that are resolved by the restrictions in CAFA regarding coupons, you don't have to follow because Illinois doesn't have a similar procedure, right? You're seeking coverage under Illinois law. There was no objection in the federal court action that this didn't comply with CAFA. I don't think that that's an issue that's ever been a part of this case. The objection is the coupon itself. How can that not involve CAFA? What this court should focus on here is the standard of review for this is abuse of discretion, Judge. We have shown that not only have there been settlements, in fact, cases providing notice and relief very similar to what we've provided to the class here, but, in fact, in other cases, less notice and arguably not as good relief. And those cases were approved and then upheld and reported upheld decisions. Right. I saw one of yours where you requested attorney fees because you didn't like what the court gave you in the FAFTA case. Or your co-counsel, right? Counsel, you said that one of the – we're reviewing this as abuse of discretion. Are there any issues that we would review in de novo such as notice? The only aspect that's reviewed de novo is whether the notice that was provided complies with due process. And I believe that everything else, including other aspects of the notice, is reviewed for abuse of discretion. And the notice, the level that's required under due process, is simply a broad reasonable standard under all the facts and circumstances as to whether the notice provided class members the opportunity to be heard and opt out. And we have over 20,000 claims from non-loyalty program members that were submitted in response to the notice, as well as the 29 opt outs and five objections. After the case was filed in St. Clair County, there was no notice at all given about the filing of the case in Illinois, was there? The website maintained for the class was updated and a notice provided there that the case had been dismissed in New York and refiled with the same settlement that had been up for a final approval hearing. The same settlement presented. So unless someone had gone to that website and found that information on the website, they would not know about the filing? Other than the direct notice given to the folks who had filed objections. How many of those were there? There were five objectors that filed objections. That was 3,656,931 transactions. Those are transactions and obviously, particularly a loyalty program member, but any consumer may make multiple transactions over this period of many months where these receipts were being printed in that fashion. So there aren't 3.6 million members of the class. It's something less than that. We don't know, but that's the number of transactions. If there are more questions for the plaintiff, I can take those. Otherwise, I'd like to reserve the rest of the appellee's time for counsel for the body shop. No questions. Thank you, Your Honor. May it please the court. My name is Terry Scanlon. I represent the body shop. I want to get right to your questions. The body shop has a significant presence under Daimler in the state of Illinois. We have shops, stores in Illinois. There are many class members in St. Clair County. This is not this was not a coupon. You don't have to buy anything to use this. This is like cash. And at the body shop, it's not like buying Gucci bags. They have excellent beauty and skin care products, but they're not expensive. $12 can buy you a significant gift. But what's most important about this case, Your Honor, is that the plaintiffs stood a very good chance of losing this case and getting nothing. And the reason for that is there was a glitch in the software by Verifone. You've all seen Verifone use the pin pads, a giant company the body shop relied upon. They made a mistake in their software, never told the body shop about it, and they actually filed a written declaration under oath saying it was their mistake that caused this problem, which means the body shop would not have been held liable for this. So why wasn't Verifone sued? Pardon? Why wasn't Verifone sued? Well, the plaintiffs can't sue Verifone. They can only sue the retailer under FACTA. But they were sued by us. So they were sued in a different litigation. So you're seeking cash? Pardon? Are you seeking cash from Verifone? No, we're seeking to indemnify us for all the money the body shop is asking. I'm asking, are you seeking cash from Verifone to be indemnified? Well, from the retailer. Are you getting coupons? No, no, no. So you're seeking cash. You're seeking indemnification. Yes, but that's because they did something that was clearly caused this problem for the company, you know, stealing the attorney's fees. Under the willfulness of this case, there would be $100 to $1,000 set as compensation for class members. Yes, but willfulness when it was clearly caused by a third-party vendor would be nearly impossible to prove. Well, unless the plaintiff could show that this was going on over a period of time, and it would be impossible for you not to notice what your receipt says. But the problem was, Your Honor, there was complete compliance with this. There was never a complaint for seven years until Verifone became the new payment processor vendor, and it was when they put their new software into effect that the mistake occurred. And as soon as the body shop found out about it, it was corrected immediately. How come the body shop wouldn't notice their own receipts over a period of almost two years? How come that couldn't be saved? Because they have been in compliance with this law for seven years. It's not something that you would look at the receipt necessarily every day when there's never been a problem for seven years. I understand, but you change vendors, you're giving out receipts every day, and nobody sees that there's a credit card number on that. That's where they're going to leave. But that certainly doesn't prove willfulness at the most. That would prove negligence at the most. It's an issue to be litigated. Now, here's my question. You know that presence alone, if you've read our most recent Illinois Supreme Court case, you know the presence alone by the body shop is not enough to confer jurisdiction in the circuit court, right? So where does the body shop live under Daimler? Where is it incorporated, and where is its principal place of business? Well, the principal place of business right now is in New Jersey. And where is it incorporated, Delaware? It was incorporated in Delaware. So what are we doing here? It is a nationwide business with many customers, many stores in the state of Illinois, and our position is that when you have a settlement like this one that benefits everybody in the country, that a court in St. Clair County would have jurisdiction to review and approve that settlement. It came to the court as a settlement, and there wasn't anything about preliminary notice. That judge in New York granted final approval of the notice because the notice goes out after the preliminary approval. And that's exactly my concern, and Justice Moore was getting at it. That judge in New York gave final approval on notice. Notice under Schutz has to be the best notice possible, and that's what was done. But it was a New York case, not a St. Clair County case. So you had addresses that decided not to re-notice because what, the cost? No. Why not give new notices? You're moving to St. Clair. We went to the judge in St. Clair and said, Your Honor, these notices went out a few months ago. And they talked about a New York case. The exact same notice, right? And they don't have to do anything. Once it's approved, if this court affirms this, they are going to automatically, those 350,000 people, the LLC card members, will automatically get the benefits of the settlement. They don't have to re-apply anything. What about all the other people? The other people. What about all the other people in this class? Your Honor, there are many courts in this state that have approved settlements, and on page 14 of our brief, with no actual notice. We gave actual notice to 365,000 people in this case. Let me ask you whether any of those cases on page 14 of your brief were cases where the plaintiff and the defendant ran from a federal court to a state court, where the federal court had already preliminarily approved it, and then you'd run to state court and try to get it approved again. Which one of those cases on page 14 of your brief had the same fact pattern? Your Honor, I doubt that they have the same exact fact pattern, but there's nothing improper if there is a federal issue over jurisdiction. There's nothing improper about refiling a case in one of the states where the body shop has stores and has class members that does not have that potential requirement as of Article 3 screening to have jurisdiction, which Illinois does not. Well, Mr. Lee could not have filed his case here. He could not have filed his case here against the body shop and allowed the court to have subject matter jurisdiction. And we must look at the plaintiff first in a settlement class. Do you agree with that? I think the plaintiff can file a class action wherever the defendant is, whether it's a Title 7 case. Go ahead and finish your thought. Pardon me? Go ahead and finish your thought. I think that the plaintiff could file a case in other jurisdictions. It happens all the time in Title 7. This is not Title 7. Well, it's the same point. It's a class action. We must look at the individual plaintiff first. Your Honor, I would also say this Court looked at this issue. The circuit court looked at this issue, and it's right. The matter is abuse of discretion is the review. That's what this Court's role is in this. This was carefully looked at. In my view, it's an embarrassment. Pardon me? In my view, it's an embarrassment. Your Honor, $12 for a case that had a very small chance of prevailing, I respectfully disagree. That's not an embarrassment. If you go to the body shop. Tell me how this case is different than Redmond. If you go to the body shop. Tell me how this case is different than Redmond v. Radio Shack. This case is different because it's not a coupon case. It's actually right. When you go over there. Money? I'm going to get money over the Internet. And see those beautiful shops, the body shops. I know the body shops. You can get a nice gift for a family member for $12. That is not an embarrassment for 365,000 people. I understand the body shop. But this case is really no different, because, in fact, you're getting it over the Internet, as opposed to getting it directly. Your Honor, if this case were improper, then most of the settlements, in fact, in many other areas of the law, would be struck down. And there's a policy importance of getting cases settled. The body shop is litigating three federal lawsuits. This is much more efficient to settle this with real benefits for the class members when they might end up losing and getting nothing, and the body shop loses because we have to litigate it, which is not what the courts are intending people to do. We have to litigate it in three different forms. That's not efficient. You're taking advantage of a state court case, reaching out to the federal court, and trying to release all of those claims, because you know under Matsushita you can do that. No, it's not. We are following this because the local council for the plaintiffs practices in St. Clair County, Your Honor. There was no reverse option here. We never made any other offers to any of the other people. And this objector, who is a professional objector, he talks about the Kehoe firm. He's objected to his settlement, Mr. Kehoe's settlement. Well, you certainly had a clear sailing provision, which is always suspect. The what? You had a clear sailing provision in the settlement agreement. I don't know what you're referring to. Well, you don't object to the attorney fees. You know that's a clear sailing provision? Well, yeah, we don't object to the attorney fees. Do you understand class action law says that when there's a clear sailing provision in a settlement class that we have to review that for collusion? The district court, the circuit court in this case, reviewed everything. And there was a hearing, and Mr. Isakson was there. And the role of this court is to determine one thing. Was there an abuse of discretion? And I, who is representing you, Your Honor, he did not mention that term when he was up here for 20 minutes. Didn't mention the term abuse of discretion. Well, I may not have given him the opportunity, sir. Pardon me? I may not have given him the opportunity. Well, but the point is he's making arguments like he makes on every case that he objects to around the country. And this is a real settlement with real benefits on behalf of a company that's trying to do its best and doesn't want to be dragging the litigation between federal courts for something that nobody has ever been injured. Even if someone did steal your card, they're protected by the credit card company. You never have to pay. Congress passed a bill that says if someone uses your card, you're not responsible. This is a, if I may say so, this is the embarrassment that somebody would come into court and make us do all this work for something where no one has been actually injured, Your Honor. Nobody, including his client, was injured. You know what? People make the same argument in facts cases. I've heard the same argument in facts cases. But I am done. Thank you. Thank you. Very well. Counselor, you have five minutes. If, since we allowed your opponents a little extra time on their position, if you need seven minutes, you can take seven minutes. Thank you, Your Honor. I do have one question. The notice I received indicated that I'm limited to speaking. before this court, which I interpreted to mean that I could only address issues that they have addressed in their argument. I wanted to talk about incentive awards in my opening. I didn't get the opportunity to do that. They did not talk about incentive awards in their argument. I don't know if I'm permitted to deal with incentive awards in my rebuttal hearing. Actually, you're permitted to do so. Thank you very much, Your Honor. The first thing I want to say is there is a difference between this case and Redmond v. Radio Shack. And the difference is that in Redmond v. Radio Shack, the company was teetering on the edge of bankruptcy. In this case, in stark contrast, we've got a very solvent, very profitable company that's worth over a billion dollars. And, you know, if you were to talk about $1,000 per class member with a class of over $3 million, and you're talking about a $3 billion debt-to-company liability in a facted case, I don't think that that's a reasonable recovery. But it's a case where there ought to have been a settlement for a substantial dollar amount after notice to all people who were members of the class could reasonably be identified, which didn't happen. What about the coupon issue in Redmond? That's what I'm trying to get to. I agree with you completely. It's a coupon settlement, Your Honor. And the issue of CAFA was raised in the objection that I filed for my client in the Southern District of New York, focusing on CAFA's provisions relating to attorney's fee awards in coupon settlements. The objection was filed as an exhibit to their moving papers and also I think as an exhibit to the objection that I filed in St. Clair Circuit Court, reiterating the objections that had been stated in the federal court. In an awkward position, filing an objection in federal court where federal law, rules of law are governing, and then getting moved to a state court where they say that, well, the federal objection's been filed here in the state court. That's good enough for due process purposes, and yet they then say, oh, but Illinois law is different. Illinois law is different from CAFA. Illinois law is different on standing. Illinois law is different on this, that, and the other thing. That's one of the reasons that it was critical that there be notice of the Illinois proceeding. Well, Illinois law also says that we take heart to the federal rules for class actions, to Rule 23. So we are to take guidance from the federal rules. That is in our legal system. Yes, I understand that, and I think that's a very good thing. With respect to incentive awards, I think that's a question that Illinois courts have not directly addressed. There is an Illinois decision, McKinsey, which affirms a trial court order where the trial court says that there's no authority for incentive awards for class representatives in Illinois. There's another case, GMAC Mortgage, which says that incentive awards are not atypical. The question is, I think, whether Illinois law provides for incentive awards. If you go back to the common fund decisions of the Supreme Court, trustees versus Greeno and central railroad and banking versus Pettis, you'll find the Supreme Court says that when a class action settles for a benefit to a larger class, the class representative, the named plaintiff, is entitled to have his reasonable attorney's fees and other litigation expenses reimbursed, but is not entitled for compensation for personal efforts on the case. Well, that's an incentive award. In Greeno, the Supreme Court said it was legally paid. Are you saying that's the Supreme Court of Illinois? That's the Supreme Court of the United States. I was going to say, incentive awards are routinely awarded in class actions in Illinois. I've seen no appellate decision. There may not be an appellate decision, but I can tell you they are routinely awarded, because I, like you, practiced in the same field. And in some federal courts, they're routinely awarded as well. You'll find they're routinely awarded these days in federal district courts, in part because nobody pointed out the Supreme Court prohibited them. They're an open question in the First Circuit. I think the First Circuit has said we've never addressed the issue. The Sixth Circuit has indicated that they're like dandelions in an unmowed law. Law, they pop up. First Circuit? The Sixth Circuit in Dwight Max Pampers. Federal court. Federal court. All right, let's talk about Illinois. Okay, in Illinois, I'm not aware of any appellate authority addressing the question of incentive awards. So you're objecting to the $4,000? I am. In a case where the class gets coupons for $12, I think that an incentive award to $4,000 gives a class representative an incentive to sell out the class for coupons in this case. But you've already claimed he's inadequate. Yes. Under Rule 23. Yes. And we have the same rule. I think the fact that he's getting the incentive bonus underscores that. There are also federal appellate decisions saying that when, under Rule 23, when somebody decides to be a class representative, they live up to the right to ask for any special treatment for themselves, saying also the $12 coupons for members of the Body Shop Rewards Program, never mind the other 3 million members of the class, give me $4,000. Because there's an inherent conflict. Pardon? Because there's an inherent conflict. I think that creates an inherent conflict. The same thing with the clear sailing provision. I agree. An inherent conflict. Absolutely, Your Honor. Absolutely. Which they have. Absolutely, Your Honor. I agree. And if incentive awards are to be permitted, I think that the Sixth Circuit's opinion in Shane v. Blue Cross Blue Shield, which doesn't say we approve of them, but says if they were to be permitted, they're going to have to be documented like attorney's fee awards to make sure that they're not a bounty for selling out the class, with time records demonstrating what the class representative did. Those were not submitted here, which I think reinforces the notion that we've got a bounty. Are you saying you want a lodestar kind of analysis for a class rep? I'm saying that if class reps are to get incentive awards, they need to demonstrate what work was done. And yet there was no demonstration. When they take their depositions, usually the defendants ask, have you read the pleadings, have you been a part of this, yadda, yadda, yadda. I don't know if they were deposed. Do you think they need more than that? I don't know who was deposed in this case, Your Honor. You were a plaintiff lawyer, you told me. The Sixth Circuit says more than that is needed, yes. And Shane Group v. Blue Cross Blue Shield. No Illinois cases say that. None that I'm aware of. I'm aware of two Illinois cases, Bukinski and GMAC. Thank you, Your Honor. Thank you all for your vigorous arguments to the court. We'll take into consideration the matter and return a verdict shortly. We'll return a decision shortly. We'll stand on recess for a few minutes. And then I can probably give you about ten minutes. Your Honor, do you want us to wait? No. You were talking about returning a decision. No, we're not going to do that. All right, thank you. All rise.